IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

| | |
|---|---|
| TAUNYA MILLER,<br><br>            Plaintiff,<br><br>     v.<br><br>SONNY PERDUE, Secretary, U.S.<br>Department of Agriculture,<br><br>            Defendant. | Case No. 2:17-cv-00670-SU<br><br>**OPINION<br>AND ORDER** |

SULLIVAN, United States Magistrate Judge:

Pro se plaintiff Taunya Miller brings this action against defendant Sonny Perdue, Secretary of the U.S. Department of Agriculture, alleging that defendant violated the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691-1691f, by improperly denying plaintiff's farm Microloan applications on the basis of sex/gender and age. Plaintiff has moved for partial

summary judgment (Docket No. 34), and defendant has moved for summary judgment (Docket No. 45). The Court heard oral argument on July 20, 2018. (Docket Nos. 60, 64). At the hearing, the Court denied plaintiff's Motion. Subsequently, the Court ordered, and the parties submitted, supplemental briefing. (Docket Nos. 63, 65). For the following reasons, the Court GRANTS IN PART AND DENIES IN PART defendant's Motion for Summary Judgment.

## FACTUAL BACKGROUND

Kent Pirkle Farms was an heirloom tomato farm in Bangs, Texas. Pl. PMSJ, Ex. 31 (Docket No. 34). In July 2014, plaintiff was interested in purchasing the farm and contacted the Stephenville, Texas office of the Farm Service Agency ("FSA"), an agency within the Department of Agriculture, to discuss loan options. *Id.*, Ex. 3; Def. MSJ, Ex. 14, at 2 (Docket No. 45-14). That month, FSA Program Technician Jane Pierce emailed plaintiff a farm ownership loan application. Plaintiff was referred to Farm Loan Manager Cynthia Kinser for further assistance. Pl. Ex. 4 (Docket No. 12).

Plaintiff submitted three loan applications: two Microloan applications, each for $35,000, and one Farm Ownership loan application for $176,000. Pl. PMSJ, Ex. 3 (Docket No. 34). The FSA received the two Microloan applications on August 29, 2014, and September 3, 2014, and the Farm Ownership Loan application on September 3, 2014. *Id.*, Ex. 2, at 4; Ex. 3, at 4; Ex. 4, at 3 (Docket Nos. 34-2 – 34-4). On September 2, 2014, plaintiff signed a contract to purchase Pirkle Farms for $200,000, which contract referenced third-party financing of $176,000. Pl. Ex. 24 (Docket No. 12); Def. MSJ, Ex. 5, at 1 (Docket No. 45-5).

On September 2, 2014, the FSA sent plaintiff a Notice of Incomplete Application regarding the Microloans, requiring plaintiff to provide additional information by September 22, 2014. Def. MSJ, Exs. 6 & 7 (Docket Nos. 45-6 & 45-7). On September 9, 2014, the FSA sent

plaintiff a Notice of Incomplete Application regarding the Farm Ownership Loan application, requiring additional information by September 29, 2014. *Id.*

Plaintiff requested that she meet with Kinser, and the two met, along with plaintiff's husband, Ernest Miller, on September 12, 2014, at the Stephenville FSA Office to discuss her applications. They discussed the FSA's statutory and regulatory requirements, as well as plaintiff's credit issues, farm experience, operating plans. Kinser Decl. ¶ 11 (Docket No. 47).

At some point in September, 2014, the FSA obtained a joint credit report regarding plaintiff's and her husband's credit and financial histories, while both the Ownership Loan and Microloan applications were pending. *See* Def. MSJ, Ex. 19 & 20 (Docket Nos. 45-19, 45-20).

On September 29, 2014, the FSA sent plaintiff a Second Notice of Incomplete Application regarding the Farm Ownership Loan application, requiring additional information by October 9, 2014, or else that application would be withdrawn. Def. MSJ, Ex. 8 (Docket No. 45-8). On October 14, 2014, the FSA sent plaintiff a Notice of Application Withdrawal regarding the Ownership Loan application, due to plaintiff's failure to provide additional information. *Id.*, Ex. 9 (Docket No. 45-9). On November 10, 2014, the FSA mailed plaintiff a letter denying the Microloan applications, due to plaintiff's failure to meet program eligibility and feasibility requirements. The letter explained plaintiff's reconsideration and appeal options, which had to be pursued within 30 days. *Id.*, Ex. 10 (Docket No. 45-10). That day, plaintiff emailed Kinser to say that she had not received the mailed letter regarding the deficiencies in the Microloan applications, and would be resubmitting the applications. *Id.*, Ex. 11 (Docket No. 45-11). Plaintiff received the Microloan denial letter December 3, 2014, within the time for filling of an appeal.

Plaintiff did not pursue the appeal or reconsideration options described in the November 10 Denial Letter regarding the Microloan applications. Kinser Decl. ¶ 16 (Docket No. 47).

A few days after plaintiff received the Microloan denial letter from FSA, in December 2014, Pirkle Farms was sold to another buyer. *Id.*, Ex. 12 (Docket No. 45-12).

On March 18, 2014, plaintiff filed a program discrimination complaint against the FSA with the USDA Office of the Assistant Secretary for Civil Rights ("OASCR"), alleging sex and age discrimination in the denial of her Microloan applications. *Id.*, Ex. 13 (Docket No. 45-13). On August 19, 2016, OASCR completed its investigation and produced a Record of Investigation. *Id.*, Ex. 16 (Docket No. 45-16). The Early Resolution and Conciliation Division attempted mediation between the parties in September 2016 and February 2017, but they were unable to resolve the matter. Butler Decl. ¶ 4 (Docket No. 46). The matter was referred back to OASCR for a Final Agency Determination. *Id.* In the interim, plaintiff filed this action, and so OASCR did not make a final decision on plaintiff's complaint. *Id.* ¶ 5.

## PROCEDURAL BACKGROUND

Plaintiff commenced this action on April 28, 2017. Compl. (Docket No. 1). On May 1, 2017, she filed an Amended Complaint, correcting the spelling of defendant's name, Am. Compl. (Docket No. 7); two weeks later, she also submitted voluminous documents titled "Exhibits" (Docket No. 12). Plaintiff brings two causes of action:

(1) For violations of the Equal Credit Opportunity Act (the "ECOA"), 15 U.S.C. §§ 1691-1691f, for defendant's alleged improper denial of plaintiff's farm loan applications on the basis of sex and age; and

(2) Under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*

On January 5, 2018, plaintiff moved for partial summary judgment on discrimination claims, and on certain of defendant's affirmative defenses. (Docket No. 34). On February 28, 2018, the Court issued an Opinion and Order, holding that plaintiff was not entitled to a jury trial on her ECOA action as against the federal government (Docket No. 44), which question had arisen at an earlier status conference (Docket No. 43). On April 16, 2018, defendant moved for summary judgment. (Docket No. 45).

The Court heard oral argument on the Motions on July 20, 2018, and at that hearing, the Court denied plaintiff's Motion for Partial Summary Judgment, for the reasons stated on the record, and as stated below. (Docket Nos. 60, 64). The Court also ordered, and the parties submitted, supplemental briefing on certain questions of fact and law. (Docket Nos. 63, 65).[1]

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The burden is on the moving party to point out the absence of any genuine issue of material fact; once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In opposing summary judgment, a party may not rely on mere allegations or denials in pleadings, but must set forth specific facts supported by competent evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. *Robi v. Reed*, 173 F.3d 736, 739 (9th Cir. 1999). "A fact issue is genuine if the evidence is such that a reasonable [fact finder] could

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636. (Docket No. 25).

return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quotation omitted). "The non-moving party has failed to meet its burden if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (quotation omitted). The substantive law governing a claim or defense determines whether a fact is material. *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 369 (9th Cir. 1998). In evaluating a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *Anderson*, 477 U.S. 242, 248 (1986).

When the party moving for summary judgment "bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial," and must "establish[] the absence of a genuine issue of fact on each issue material to" each claim. *Houghton v. South*, 965 F.2d 1532, 1536-37 (9th Cir. 1992) (italics and quotation omitted). The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue of fact. *Id.* at 1537. "[T]he movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

## ANALYSIS

### I. <u>Plaintiff's Administrative Procedure Act Claim</u>

Although plaintiff does not explicitly bring a claim under the Administrative Procedure Act ("APA"), her Amended Complaint contains a section titled "Judicial Review of Unlawful Agency Action" that references various provisions of the APA, 5 U.S.C. § 551 *et seq.* Am. Compl. ¶¶ 90-103.

Under the APA, a court "shall" set aside any agency action that is, *inter alia*, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). However, APA review is available to challenge an agency action only where "there is no other adequate remedy in a court." *Id.* § 704. "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988). An APA action is barred where it would be "identical in all relevant respects to [a statutory] cause of action" that provides an "adequate remedy." *Coos Cty. Bd. of Cty. Comm'rs v. Kempthorne*, 531 F.3d 792, 810 (9th Cir. 2008). "[F]ederal courts lack jurisdiction over APA challenges whenever Congress has provided another 'adequate remedy.'" *Brem-Air Disposal v. Cohen*, 156 F.3d 1002, 1004 (9th Cir. 1998).

In her Amended Complaint, plaintiff seeks the remedies of monetary damages, costs, fees, injunctive and equitable relief, and declaratory relief. Am. Compl. ¶¶ 104-13. The ECOA provides all these types of relief. 15 U.S.C. § 1691e (authorizing damages, "reasonable attorney's fees," "costs of the action," and "equitable and declaratory relief," as against "[a]ny creditor who fails to comply with any requirement imposed under" the ECOA). The ECOA thus provides an "adequate remedy" for the alleged unlawful agency action, i.e., the allegedly improper denial of plaintiff's loan applications on the basis of sex and age. Plaintiff's allegations as to why the agency action was allegedly improper under the APA are the same as those she brings under the ECOA. Am. Comp. ¶¶ 90-91, 102. The ECOA specifically allows redress for the alleged discrimination that plaintiff would seek to remedy under the APA. At least two appellate courts have found that the ECOA's remedies are adequate and therefore preclude APA review. *Garcia v. Vilsack*, 563 F.3d 519, 524 (D.C. Cir. 2009) ("[A]n ECOA discrimination claim filed directly against the USDA would be adequate to preclude a cause of action under the

APA."); *Johnson v. Vilsack*, 833 F.3d 948, 955-56 (8th Cir. 2016) ("Judicial review through the APA is precluded because there is an alternative adequate remedy in court in the form of an ECOA suit."). The Court finds their reasoning persuasive.

Therefore, the ECOA provides an adequate remedy for plaintiff's discrimination claims, and APA review is unavailable in this action. The Court grants defendant's Motion for Summary Judgment as to plaintiff's APA claim.

## II.  Plaintiff's Equal Credit Opportunity Act Claim

### A.  Burden of Proof for Equal Credit Opportunity Act Claims

ECOA disparate treatment claims are governed by the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Woodworth v. Bank of Am., Nat. Ass'n*, No. CIV. 09-3058-CL, 2011 WL 1540358, at *18 (D. Or. Mar. 23, 2011), *report and recommendation adopted*, 2011 WL 1542514 (Apr. 21, 2011); *Kelly v. U.S. Bank*, No. CIV. 08-1421-AC, 2010 WL 4135028, at *16 (D. Or. July 29, 2010), *report and recommendation adopted*, 2010 WL 4116754 (Oct. 14, 2010).

A plaintiff must first establish a *prima facie* case of discrimination. *Woodworth*, 2011 WL 1540358, at *16. A *prima facie* case requires a plaintiff to "allege and prove" that:

> (1) she belongs to a minority or protected class,
> (2) she applied for and was qualified for a loan,
> (3) despite her qualifications she was rejected, and
> (4) males . . . of similar credit stature were given loans, or were treated more favorably than plaintiff in the application process.

*Id.* at *17.

Once a plaintiff has established a *prima face* case, "[t]he burden of production, but not persuasion, then shifts to the [defendant] to articulate some legitimate, nondiscriminatory reason

for the challenged action." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123-24 (9th Cir. 2000).

"Should the defendant carry its burden, the burden then shifts back to the plaintiff to raise a triable issue of fact that the defendant's proffered reason was a pretext for unlawful discrimination." *Noyes v. Kelly Servs.*, 488 F.3d 1163, 1168 (9th Cir. 2007). "A plaintiff can prove pretext in two ways: (1) *indirectly*, by showing that the [defendant's] proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) *directly*, by showing that unlawful discrimination more likely motivated the [defendant]." *Id.* (alterations omitted, italics in original). "All of the evidence as to pretext—whether direct or indirect—is to be considered cumulatively." *Id.* (alteration omitted). "Where the evidence of pretext is circumstantial, rather than direct, the plaintiff must present 'specific' and 'substantial' facts showing that there is a genuine issue for trial." *Id.*

Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003) (alteration and quotation omitted), *as amended* (Jan. 2, 2004). "Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements or actions by the [defendant]." *Coghlan v. Am. Seafoods Co.*, 413 F.3d 1090, 1095 (9th Cir. 2005).

> Direct evidence of discrimination is evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the fact finder to infer that the attitude was more likely than not a motivating factor in the . . . decision.

*Siring v. Or. State Bd. of Higher Educ.*, 927 F. Supp. 2d 1030, 1053 (D. Or. 2012).

    **B.**     **Application to Plaintiff's ECOA Claim**

        1.     Plaintiff's *Prima Facie* Case

For purposes of summary judgment, defendant has assumed that plaintiff can establish a *prima facie* case of discrimination under the ECOA (although defendant disputes that plaintiff would be able to prove such a case at trial). Def. MSJ at 16 (Docket No. 45). This shifts the burden to defendant to offer nondiscriminatory reasons for the loan denial.

2. Defendant's Nondiscriminatory Reasons

With the burden shifted, defendant has offered multiple legitimate, nondiscriminatory reasons for denying plaintiff's loan application. The Denial Letter stated that defendant denied plaintiff's application because she failed to meet program eligibility and feasibility requirements. Def. MSJ, Ex. 10 (Docket No. 45-10) ("Denial Letter"). The Denial Letter provided four bases for denial: (1) plaintiff's derogatory credit history, (2) the lack of a feasible farm operating plan, (3) lack of evidentiary support for use of premium pricing for the heirloom tomatoes, and (4) use of non-acceptable factors for establishing a new farming enterprise. *Id.*

Eligibility requirements require a Microloan applicant to have acceptable credit history. 7 C.F.R. § 764.252. The FSA found that Plaintiff had a pattern of late payments to creditors. Denial Letter, at 2. Despite plaintiff's meeting with Kinser, the parties were unable to resolve the credit issues. *Id.*, at 2-3.

The FSA can approve a loan only if it determines that an applicant has a feasible plan, including loan repayment and satisfaction of other credit requirements. 7 C.F.R. § 764.401(a)(1)(i). The FSA determined that plaintiff's balance sheet and projected plan had inaccuracies and were not feasible, specifically regarding repayment. Denial Letter, at 3-5. The Denial Letter included several supporting examples: inconsistent balance sheet entries, inconsistencies in greenhouse square footage, lack of historical information on plaintiff's ability to operate the facility, disagreement over tomato cycles per year; failure to include tax liability,

failure to provide a written lease, and lack of source information regarding coverage of annual operating expenses or assurance of loan repayment. *Id.*, at 3-8.

An applicant must submit a farm operating plan based on accurate and verifiable information. 7 C.F.R. § 104. The FSA considers several factors to evaluate the plan, including projected yields, past production records, and establishment of a premium price. *Id.* The FSA found that Plaintiff failed to submit evidentiary support for premium pricing for the heirloom tomatoes. Denial Letter, at 5-6. The application lacked historical records regarding higher or premium pricing, and plaintiff improperly relied on the seller's historical yields. *Id.*

These constitute legitimate, nondiscriminatory reasons for why the FSA denied plaintiff's loan application. Defendant has met his burden, and so the burden shifts back to plaintiff to show that defendant's proffered explanations were pretextual.

### 3. Plaintiff's Evidence of Pretext

Plaintiff has presented direct evidence that creates a genuine issue of material fact as to whether defendant's reasons for the denial of her Microloan applications were pretextual, as to the alleged sex discrimination. Plaintiff, however, has failed to present any evidence that the denial constituted age discrimination.

Plaintiff has presented evidence that the FSA obtained, and reviewed, a joint credit report regarding her and her husband's financial information as part of its consideration of her Microloan applications. *See* Def. MSJ, Ex. 19 & 20 (Docket Nos. 45-19, 45-20). However, Mr. Miller was not an applicant on those Microloan applications, and his financial information was not relevant to plaintiff's potential eligibility for those loans; although FSA regulations required a joint credit report as to the Ownership Loan application, they required only plaintiff's individual credit report as to the *Microloan* applications. *Id.* As defendant has conceded, FSA

regulations and procedures require completion of a form FSA-2007 to obtain the credit information of a person who is not the loan applicant (here, plaintiff's husband), but while the FSA never received a "formal, signed" form FSA-2007 for Mr. Miller, the FSA did obtain his credit information. Transcript 28:9 – 30:16 (Docket No 64). (Defendant contends that it believed it had Mr. Miller's verbal consent to obtain the joint credit report, and thus that the FSA's action was "appropriate," *id.* 29:13, but this is a disputed issue of fact.)

Consideration of Mr. Miller's credit history in denying plaintiff's Microloan application constitutes evidence of discrimination based on marital status, and on sex. "The purpose of the ECOA is to eradicate credit discrimination waged against women, especially married women whom creditors traditionally refused to consider for individual credit." *Anderson v. United Finance Co.*, 666 F.2d 1274, 1277 (9th Cir. 1982) ("If the spouse were required to sign the credit instrument, the credit offered would be joint, not individual credit, and this would be discrimination on the basis of marital status."). "In light of the purposes of the ECOA," a plaintiff need not show that a loan decision or policy that singles out and specifically harms married women "was adopted with a discriminatory intent." *Miller v. Am. Exp. Co.*, 688 F.2d 1235, 1239 (9th Cir. 1982) ("[N]ot requiring proof of discriminatory intent is especially appropriate in analysis of ECOA violations because discrimination in credit transactions is more likely to be of the unintentional, rather than the intentional, variety." (quotation omitted)). "The interruption of [plaintiff's] credit on the basis of the change in her marital status is precisely the type of occurrence that the ECOA and regulations thereunder are designed to prevent." *Id.* at 1240.[2] Unlawful consideration of plaintiff's marital status could further give rise to an inference

---

[2] "We must construe the literal language of the ECOA in light of the clear, strong purpose evidenced by the Act and adopt an interpretation that will serve to effectuate that purpose." *Bros. v. First Leasing*, 724 F.2d 789, 793 (9th Cir. 1984).

of discrimination based on sex, particularly under the ECOA. *Anderson*, 666 F.2d at 1277 (discussing remedial purposes of the ECOA with regard to married women).

At oral argument, defendant conceded that if the USDA were to have considered the joint credit report with regard to the Microloan applications (assuming there were no Ownership Loan application also pending), "[it] would agree 100 percent, that's extremely problematic and there's a problem." Transcript 29:10-12 (Docket No. 64).[3] Defendant nonetheless argues that because the Ownership Loan application (as to which a joint credit report *was* required) was pending when the joint credit report was obtained, there was no wrongdoing with the joint credit report having been obtained and possibly considered as to the Microloan applications (as to which only an individual credit report was required). This presents a question of fact whether the joint credit information was improperly considered as part of the consideration of the Microloan applications.

Additionally, plaintiff has presented evidence that could further suggest discrimination: defendant's allegedly having inquired about whether Mr. Miller would cosign or guarantee plaintiff's loans. Plaintiff submits the declarations of herself and her husband as evidentiary support. *See* T. Miller Decl. ¶¶ 6-12 (Docket No. 55); E. Miller Decl. ¶¶ 4-10 (Docket No. 56). This creates an issue of fact whether defendant improperly considered plaintiff's status as a married woman, and the financial information of her husband, as to the Microloan applications. *See Anderson*, 666 at 1276-77 & n.1 (holding that requiring a spouse's signature on credit instruments was unlawful discrimination on the basis of marital status under the ECOA).

---

[3] Defendant says "agree" because the Court had earlier indicated at the hearing: "[I]t's problematic for the government to look at a joint credit report when they're not supposed to. . . . [T]here may be some authority out there to say that that is discrimination." Transcript 29:2-6 (Docket No. 64).

In response, defendant argues that the FSA ran a joint credit report as part of its evaluation of plaintiff's Ownership Loan application, and used this joint report to review the Microloan applications because it believed this to be in plaintiff's interest and because it would save her the money of running another, individual credit report. Defendant argues that it believed it had plaintiff's or her husband's oral consent to the FSA's running and using a joint credit report; and that defendant's denial of the Microloan applications was based on numerous other issues with the eligibility and feasibility unrelated to the joint credit report. However, each of these presents a disputed question of fact, and the actual motives, beliefs, and actions of defendant in denying the loan cannot be determined on summary judgment, but are issues for the finder of fact. *See Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1993).

Defendant argues that the Court should credit its multiple other, purported reasons for denying the Microloan application, evaluate these and find them truthful and valid, and hold that they outweigh any potential problems with having run the joint credit report. This sort of weighing of evidence and determining of facts is precisely what the Court is not to do on summary judgment. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 856 (9th Cir. 2002) (citation omitted), *aff'd*, 539 U.S. 90 (2003). Further, defendant's argument presents an analogous situation to the "mixed motive" scenario under Title VII employment discrimination cases. Courts look to Title VII in analyzing ECOA actions. *E.g.*, *Bros.*, 724 F.2d at 793 ("The Equal Credit Opportunity Act (ECOA) is Title VII of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601-1693r (1982)."); *Miller*, 688 F.2d at 1239-40 ("The ECOA's history refers by analogy to the disparate treatment and adverse impact tests for discrimination which are used in employment discrimination cases under Title VII."). In a mixed motive case, an actor has multiple or mixed reasons for an allegedly discriminatory action, and there is evidence that while

one of those reasons was potentially discriminatory, there is evidence that other reasons were legitimate. *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1041 (9th Cir. 2005). In such a case, the first question for the fact-finder is "whether the discriminatory reason was 'a motivating factor' in the challenged action." *Costa*, 299 F.3d at 856-57. If the "answer to this question is in the affirmative, then the [actor] has violated" anti-discrimination law. *Id.* If the fact-finder determines, however, that the discriminatory reason was not a "motivating factor" for the challenged action, there has been no wrongdoing. *Id.* The plaintiff's "ultimate burden of proof" is "to show by a preponderance of the evidence that the challenged . . . decision was 'because of' discrimination." *Id.* (quotation omitted). In this case, the disputed question of fact for the fact-finder, which precludes summary judgment, is whether consideration of plaintiff's marital status, or the financial information of her husband, was a "motivating factor" in the Microloan applications denial, or whether it was not a factor, such that defendant denied the application solely on the basis of plaintiff's own financial information, due to the various purported problems with plaintiff's eligibility and feasibility, as defendant alleges.[4]

Regarding age discrimination, plaintiff has failed to present evidence—direct, indirect, circumstantial, or cumulative—that the denial constituted age discrimination. There is no evidence that defendant in any way considered plaintiff's age. Defendant is entitled to summary judgment on plaintiff's ECOA claim as to age discrimination.

However, plaintiff's claim of sex discrimination under the ECOA presents a different story. Plaintiff has presented evidence that creates a genuine issue of material fact as to whether

---

[4] At oral argument, the Court specifically ordered supplemental briefing on the applicable legal analysis where "there could be discriminatory reasons to deny the loan and nondiscriminatory reasons to deny the loan," and whether "if there are nondiscriminatory reasons to deny the loan," that would suffice to protect defendant from liability even given the presence of potentially discriminatory reasons. Transcript 35:5-10 (Docket No. 64). Defendant took up the opportunity to submit supplemental briefing, but defendant's briefing was not helpful.

her married status and sex were "motivating factors" in the Microloan applications denial, and whether defendant's allegedly nondiscriminatory reasons for the denial were pretextual; accordingly, the Court denies defendant's Motion for Summary Judgment as to sex discrimination. For the same reasons, the Court denied plaintiff's Motion for Partial Summary Judgment (Docket No. 34), because there were fact issues regarding the reasons for the loan application denial, and the Court cannot determine on summary judgment that defendant's reasons were pretextual or discriminatory.

## CONCLUSION

The Court GRANTS IN PART AND DENIES IN PART defendant's Motion for Summary Judgment (Docket No. 45), in accordance with the above.

IT IS SO ORDERED.

DATED this 29th day of October, 2018.

/s/ Patricia Sullivan
PATRICIA SULLIVAN
United States Magistrate Judge