IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION

**TAUNYA MILLER**,

    Plaintiff,

v.

**THOMAS J. VILSACK**, Secretary,
U.S. Department of Agriculture,

    Defendant.

No. 2:17-cv-00670-MO

OPINION AND ORDER

**MOSMAN, J.**,

This matter comes before me on Defendant's Motion in Limine [ECF 151]. For the reasons discussed below, I GRANT in part and DENY in part the motion.

## BACKGROUND

Plaintiff Taunya Miller has brought this suit alleging that the U.S. Department of Agriculture's Farm Service Agency ("FSA") wrongfully denied her 2014 microloan application under the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(a)(1). Am. Compl. [ECF 7] ¶ 1. Plaintiff sought the $35,000 microloan to lease the Pirkle Farm from Mr. Kent Pirkle in Bangs, Texas and grow heirloom tomatoes. *Id.* ¶ 7. Plaintiff seeks over $4.3 million in lost-profit damages from the denial of the 2014 microloan application. Suppl. Foster Decl. [ECF 157-25] Ex. 25 at 2.

1 – OPINION AND ORDER

Defendant conceded liability regarding the denial of Plaintiff's 2014 application for the $35,000 microloan. Notice of Concession of Liability [ECF 153]. Defendant "concedes that the [FSA] inappropriately obtained and used a joint credit report regarding Plaintiff's and her husband's financial information as part of FSA's consideration of Plaintiff's microloan application." *Id*. at 2. Additionally, "consideration of Plaintiff's husband's credit history in denying Plaintiff's microloan application constitutes discrimination under the ECOA." *Id*.

In the instant motion, Defendant seeks to exclude from the bench trial set in this case two categories of lost-profit damages, totaling more than $4.3 million, sought by Plaintiff: any "out-year" lost-profit damages and lost-profit damages for the year Plaintiff would have had the microloan. Mot. in Lim. [ECF 151] at 2.

## LEGAL STANDARD

Motions in limine are "procedural mechanism[s] to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). The need for motions in limine to exclude prejudicial evidence in the context of a bench trial are "generally superfluous." *Id*. at 1112. However, if a motion in limine does not concern an evidentiary issue, but instead seeks a dispositive ruling, the Court can apply the correct legal standard to resolve the motion. *See Dubner v. City & County of S.F.*, 266 F.3d 959, 968 (9th Cir. 2001) (applying motion to dismiss standard to a motion in limine that sought a dispositive ruling).

My ruling on this motion in limine creates both good news and bad news for the Defendant. The good news for Defendant is that I will consider the motion. The line between what issues can and should be considered in motions in limine versus a dispositive motion can, at times, be unclear. *See e.g., id.* For that reason, I allow Defendant's instant motion. Now for the

2 – OPINION AND ORDER

bad news for Defendant. In considering the motion, I will not simply apply the Federal Rules of Evidence as I would in deciding a true motion in limine. Instead, I apply the legal standard for summary judgment because in filing this motion Defendant does not seek to simply exclude certain evidence from trial, but rather seeks partial summary judgment on damages.

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The initial burden for a motion for summary judgment is on the moving party to identify the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to demonstrate, through the production of evidence listed in Fed. R. Civ. P. 56(c)(1), that there remains a "genuine issue for trial." *Celotex*, 477 U.S. at 324. The non-moving party may not rely upon the pleading allegations, *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995) (citing Fed. R. Civ. P 56(e)), or "unsupported conjecture or conclusory statements," *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). All reasonable doubts and inferences to be drawn from the facts are to be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

For the reasons stated below, I GRANT Defendant's motion to exclude lost-profit damages from the "out-years" but I DENY Defendant's motion to exclude lost-profit damages for the year Plaintiff could have leased the Pirkle farm and grown tomatoes if she had been granted the microloan.

3 – OPINION AND ORDER

## I. Only the 2014 Microloan Application is at Issue

As an initial matter, I must decide what loan application is at issue in this case. In 2014, Plaintiff applied for two different loans with the FSA. Resp. in Opp'n [ECF 154] at 2–4. The first is the 2014 microloan application and the second is the $176,000 farm ownership loan application. *Id*. at 2–4, 6. Defendant contends only the microloan application is at issue. Mot. in Lim. [ECF 151] at 3 n.1. Plaintiff disagrees. Resp. in Opp'n [ECF 154] at 1.

I agree with Defendant that only the $35,000 microloan is at issue in this case. Plaintiff's amended complaint addresses the microloan application and denial almost exclusively. *See* Am. Compl. [ECF 7]. The amended complaint references the farm ownership loan only once in passing. *Id*. ¶ 24. Further, the "Discrimination Based on Age and Gender" cause of action only discusses the denial of the 2014 microloan. *Id*. ¶¶ 53–89. In 2018, Plaintiff agreed with Magistrate Judge Sullivan that the farm ownership loan "is really not an issue in this case." Martin Decl. [ECF 152-2] Ex. B at 4. In an Opinion and Order from August 2021, Magistrate Judge Sullivan described Plaintiff's case as follows: "Plaintiff challenges the [FSA's] November 2014 denial of Plaintiff's July 2014 application for a $35,000 microloan." Op. and Order [ECF 132] at 1. Plaintiff did not object to this characterization of the case.

While it may be true that "[t]he loans and Defendant's actions are intertwined," it does not necessarily follow that Plaintiff put the Farm Ownership Loan application at issue in this litigation. Resp. in Opp'n [ECF 154] at 12. The way Plaintiff chose to plead her complaint and the representations she has made to the Court show that only the 2014 microloan application are at issue.

4 – OPINION AND ORDER

## II.   Texas Law Applies in Determining Lost-profit Damages

The next issue that must be addressed is what states law applies for determining lost-profit damages. I find that Texas law applies.

In its motion, Defendant states that it believes Texas damages law on lost profits is applicable because the claim arose in Texas, when Plaintiff resided there and sought to operate a Texas farm, and the FSA employees whose actions are at issue were located in Texas. Mot. in Limine [ECF 151] at 5. It is unclear what law Plaintiff argues applies to assessing lost-profit damages in this case. In her response, Plaintiff cites to both Oregon and Texas law, but predominantly Oregon law. Resp. in Opp'n [ECF 154] at 16–18. Therefore, I assume Plaintiff advocates for the application of Oregon law.

A federal district court sitting in diversity jurisdiction under 28 U.S.C. § 1332 applies substantive state law and federal procedural law. *Cooper v. Tokyo Elec. Power Co. Holdings, Inc.*, 960 F.3d 549, 557 (9th Cir. 2020) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). Choice of law in Oregon is governed by statute—Or. Rev. Stat. § 15.300 *et seq*. Or. Rev. Stat. § 15.445 states that "the rights and liabilities of the parties with regard to disputed issues in a noncontractual claim are governed by the law of the state whose contacts with the parties and the dispute and whose policies on the disputed issue make application of the state's law the most appropriate for those issues."

The statute provides three factors for consideration in deciding what law applies. First, identifying which state has the most relevant contact with the dispute. Or. Rev. Stat. § 15.445(1). Second, identifying the policies embodied in the state's laws. *Id*. at (2). And third, evaluating the relevant strength and pertinence of the policies. *Id*. at (3).

5 – OPINION AND ORDER

Here, Texas is the state with the most relevant contact to the dispute. The claim arose in Texas, when Plaintiff resided there and sought to operate a Texas farm, and the FSA employees whose actions are at issue were located in Texas. In both Oregon and Texas, the law requires lost-profit damages be proven with "reasonable certainty" which strongly suggests that the policies underlying the laws of the two states are very similar for the second and third factors identified above. *Texas Instruments, Inc. v. Teletron Energy Mgmt.*, 877 S.W.2d 276, 279 (Tex. 1994) (requiring lost profits be proven with reasonable certainty); *Summa Real Estate Grp., Inc. v. Horst*, 464 P.3d 483, 488 (Or. Ct. App. 2020) (same). Therefore, I apply Texas law in determining lost-profit damages.

### III.     Plaintiff Cannot Prove Lost-profit Damages with Reasonable Certainty for the "Out-Years" but may be able to do so for the Year of the Denied Microloan

If a plaintiff prevails on liability under the ECOA, they may recover "actual damages sustained." 15 U.S.C. § 1691e(a). Actual damages must be "specifically proven," and the court will not "presume any injury." *Anderson v. United Fin. Co.*, 666 F.2d 1274, 1277–78 (9th Cir. 1982). Defendant states that "[e]xisting federal case law does not establish that lost profit damages are included as 'actual damages' under the ECOA" and instead points the Court to state common law principles, citing *Carey v. Piphus*, 435 U.S. 247, 261 n.13 (1978) for the proposition that district courts can look to common law principles to furnish necessary remedies. Mot. in Limine [ECF 151] at 5. I agree with defendant and, as previously discussed, look to Texas law.

The Texas Supreme Court, in *Texas Instrument*, 877 S.W.2d at 279, stated that the following can be considered in determining lost profits with reasonable certainty:

> Where the business is shown to have been already established and making a profit at the time when the contract was breached or the tort committed, such pre-existing profit, together with other facts and circumstances, may indicate with reasonable certainty the

amount of profits lost. It is permissible to show the amount of business done by the plaintiff in a corresponding period of time not too remote, and the business during the time for which recovery is sought. Furthermore, in calculating the plaintiff's loss, it is proper to consider the normal increase in business which might have been expected in the light of past development and existing conditions.

Defendant argues that it is entirely speculative to consider out-year lost-profit damages from the denial of the 2014 microloan application. Plaintiff only had a one-year agreement with Mr. Pirkle to lease his farm. Martin Decl. [152-1] Ex. A at 9:7–14.[1] I agree that lost-profit damages are speculative for the out-years and Plaintiff cannot prove them with reasonable certainty. The lease with Mr. Pirkle was only for one year, therefore, any out-year lost-profits are entirely speculative; so speculative that I find there is no genuine issue of material fact, because no rational jury could find for Plaintiff, even viewed through the prism of summary judgment.

Defendant goes on to argue that I should exclude lost-profit damages for the year Plaintiff intended to lease the Pirkle Farm with the microloan for the following reasons: Plaintiff lacked experience managing commercial farming operations, her 2011–2013 farming operations were unsuccessful, and she had no experience growing tomatoes. Mot. in Lim. [ECF 151] at 8–9 (citing Martin Decl. [ECF 152] Ex. A at 3–5, 10–12, 20, 22–26; Ex. C at 3). Mr. Pirkle, the individual that Plaintiff was to lease the farm from, was an established tomato farmer who only had $39,400 in profits for 2013, *id*. Ex. A at 15, 31, and the terms of the lease required Plaintiff to give Mr. Pirkle $24,000 leaving her with only $11,000 for operating expenses. *Id*. Ex. B at 3–4; Ex. A at 31.

However, I find that when applying the summary judgment standard, there are questions of material fact as to whether there are lost-profit damages for the year Plaintiff would have

---

[1] For what appears to be the first time in this litigation, Plaintiff asserts that she had an agreement to purchase the farm at any time, not just at the end of the one-year lease. Resp. in Opp'n [ECF 154] at 14. Plaintiff points to no other evidence outside of her own declaration filed with her response to support this assertion. Miller Decl. [ECF 155] ¶ 10.

7 – OPINION AND ORDER

leased the farm from Mr. Pirkle. While Plaintiff lacked success in farming generally and experience in tomato farming specifically there are questions of material fact as to whether she could have had a profit in the lease year. At a deposition Plaintiff stated that she would have used the $11,000 that remained from the loan to "take the existing marketing…and…expand it to the best of my ability within the microloan opportunity. Martin Decl. [ECF 152] Ex. A at 9:11–14. Therefore, Defendant ultimately fails to demonstrate there is no genuine dispute as to any material fact for lost-profit damages in the year Plaintiff would have leased the farm from Mr. Pirkle.

## CONCLUSION

For the reasons stated above, I GRANT Defendant's motion to exclude lost-profit damages from the "out-years" but I DENY Defendant's motion to exclude lost-profit damages for the year Plaintiff could have farmed tomatoes if she had been granted the microloan.

IT IS SO ORDERED.

DATED this  13  day of January, 2022.

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge

8 – OPINION AND ORDER